Marsha Lee **KENNEDY** and Stephen Michael Kennedy, Plaintiffs–Appellants,

v.

Robert G. **FREEMAN**, M.D. and Robert G. Freeman, P.A., a Texas corporation, Defendants–Appellees.

No. 89–5102.

United States Court of Appeals, Tenth Circuit.

Nov. 14, 1990.

---

Matt A. Melone (Jerry M. Melone, on the briefs), of Melone, Shepherd, Schroeder, Allred & Melone, Tulsa, Okl., for plaintiffs-appellants.

Galen L. Brittingham (Patricia A. Lamb, on the brief), of Thomas, Glass, Atkinson, Haskins, Nellis & Boudreaux, Tulsa, Okl., for defendants-appellees.

Before SEYMOUR, MOORE and BRORBY, Circuit Judges.

SEYMOUR, Circuit Judge.

Marsha Lee Kennedy and Stephen Michael Kennedy ("Kennedy") appeal from the district court order dismissing their complaint for lack of personal jurisdiction over defendants, Robert G. Freeman, M.D. and Robert G. Freeman, P.A. ("Freeman"). We reverse.

I.

Marsha Kennedy, a resident of Oklahoma, sought medical advice in 1982 from her physician, Dr. Dosser, because of a "mole" on her thigh. Dosser removed the lesion and sent it from his office in Oklahoma to Freeman in Dallas, Texas, for a special measurement. Freeman willingly accepted the sample. He measured the sample and sent a report to Dosser indicating the thickness of the lesion, expecting that it would be used in the treatment of Kennedy. Freeman also evidently sent his bill to Oklahoma.

Unfortunately, Freeman's report was inaccurate. He incorrectly advised Dosser that the specimen was 0.2 mm thick when in fact it measured 1.2 mm. The thickness of a lesion determines the treatment to be administered to a patient. As a result of the error, Kennedy was not given any treatment or follow-up care. Four years later, she learned that malignant melonoma had spread over her entire body.

Kennedy filed a complaint in the Northern District of Oklahoma alleging Freeman negligently undermeasured and reported the size of the lesion. Freeman filed a motion to dismiss for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2). The district court granted the motion from which Kennedy appeals. *See Kennedy v. Freeman*, 710 F.Supp. 1317 (N.D.Okla. 1989).

## II.

■■■ This court reviews district court jurisdictional rulings de novo. *Ten Mile Indus. Park v. Western Plains Serv. Corp.*, 810 F.2d 1518, 1524 (10th Cir.1987). The following standard controls our review:

"The plaintiff bears the burden of establishing personal jurisdiction over the defendant. Prior to trial, however, when a motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials, the plaintiff need only make a prima facie showing. The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits. If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party."

*Behagen v. Amateur Basketball Ass'n of the United States*, 744 F.2d 731, 733 (10th Cir.1984) (citations omitted), *cert. denied*, 471 U.S. 1010, 105 S.Ct. 1879, 85 L.Ed.2d 171 (1985). In a diversity action, forum law determines whether a plaintiff has made a prima facie showing of minimum contacts to establish jurisdiction. *Yarbrough v. Elmer Bunker & Assocs.*, 669 F.2d 614, 616 (10th Cir.1982). A plaintiff must satisfy the requirements of the forum's long-arm statute as well as the federal constitution to establish personal jurisdiction. *Equifax Servs., Inc. v. Hitz*, 905 F.2d 1355, 1357 (10th Cir.1990). Oklahoma's long-arm statute jurisdiction is coextensive with the constitutional limitations imposed by the Due Process Clause. *Rambo v. American Southern Ins. Co.*, 839 F.2d 1415, 1416–17 (10th Cir.1988).[1]

Therefore, if jurisdiction is consistent with the Due Process Clause, Oklahoma's long-arm statute authorizes jurisdiction over a nonresident defendant. We maintain the following general constitutional test for the exercise of personal jurisdiction:

" 'A federal court sitting in diversity "may exercise personal jurisdiction over a nonresident defendant only so long as there exist ' "minimum contacts" ' between the defendant and the forum state." "The defendant's contacts with the forum state must be such that maintenance of the suit 'does not offend "traditional notions of fair play and substantial justice." ' " ' "

*Rambo*, 839 F.2d at 1417 (citations omitted).

In order to establish specific jurisdiction,[2] the defendant must do some act that represents an effort by the defendant to "purposefully avail[ ] itself of the privilege of conducting activities within the forum State." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958); *Rambo*, 839 F.2d at 1417. A defendant does so when she purposefully directs her foreign acts so that they have an effect in the forum state. *Lanier v. American Bd. of Endodontics*, 843 F.2d 901, 910 (6th Cir.), *cert. denied*, 488 U.S. 926, 109 S.Ct. 310, 102 L.Ed.2d 329 (1988).

The purposeful availment requirement serves two functions. First, it identifies acts that a defendant would reasonably expect to subject her to jurisdiction in the particular forum. Second, it ensures that only the *defendant's* acts directed at the forum establish jurisdiction. *Rambo*, 839 F.2d at 1419 (citing *Burger King v. Rudzewicz*, 471 U.S. 462, 474–75, 105 S.Ct. 2174, 2183–84, 85 L.Ed.2d 528 (1985)).

---

**1.** Oklahoma's long-arm statute, Okla.Stat. tit. 12, § 2004(F) (Supp.1989), provides:

"A court of this state may exercise jurisdiction on any basis consistent with the Constitution of this state and the Constitution of the United States."

**2.** Jurisdiction may either be general or specific. General jurisdiction arises from a defendant's continuous and systematic activity in the forum state. *See Rambo v. American Southern Ins. Co.*, 839 F.2d 1415, 1418 (10th Cir.1988); *Beha-*

*gen v. Amateur Basketball Ass'n of the United States*, 744 F.2d 731, 733 (10th Cir.1984), *cert. denied*, 471 U.S. 1010, 105 S.Ct. 1879, 85 L.Ed.2d 171 (1985). Specific jurisdiction arises in the absence of such activity and is predicated on a defendant's minimum contacts with the forum which give rise to the cause of action. In view of the nature of Freeman's contacts in this case, we believe a specific jurisdiction analysis applies here.

Random, fortuitous, or unilateral acts of other parties cannot be the basis for jurisdiction. *Id.*

In the context of doctor-patient litigation, special rules have evolved to ensure that personal jurisdiction is asserted over a doctor only when she has purposefully availed herself of the privileges of conducting activities within her patient's state. While a doctor's practice may be local, she may often treat out-of-state patients who seek her help. Thus, courts have had to fashion jurisdictional rules when doctors who have essentially local practices become involved in another state not as a result of their intention to do so but, rather, as a result of the action of their out-of-states patients. *See, e.g., Wright v. Yackley,* 459 F.2d 287, 288–89 (9th Cir.1972) (no jurisdiction in Idaho over South Dakota doctor who treated his patient in South Dakota and merely phoned a prescription refill into Idaho); *McAndrew v. Burnett,* 374 F.Supp. 460 (M.D.Penn.1974) (no jurisdiction in Pennsylvania over New York surgeon where alleged negligent surgery occurred in New York and decedent subsequently moved to Pennsylvania and died there). Courts have found jurisdiction over nonresident doctors where they purposefully directed their actions at plaintiffs' states. For example, where doctors or hospitals have intentionally solicited business from a state, courts have held jurisdiction over them to be proper in that state. *See, e.g., Cubbage v. Merchent,* 744 F.2d 665 (9th Cir.1984), *cert. denied,* 470 U.S. 1005, 105 S.Ct. 1359, 84 L.Ed.2d 380 (1985); *Pijanowski v. Cleveland Clinic Found.,* 635 F.Supp. 1435 (E.D.Mich.1986); *Lemke v. St. Margaret Hosp.,* 552 F.Supp. 833 (N.D.Ill.1982).

The district court here erred in asserting that jurisdiction over a nonresident doctor cannot be established "[u]nless there is some form of solicitation." *Kennedy,* 710 F.Supp. at 1320. Whether a "party solicited the business interface is irrelevant, so long as defendant then directed its activities to the forum resident." *Lanier,* 843 F.2d at 910. In *McGee v. Riekhof,* 442 F.Supp. 1276 (D.Mont.1978), the court asserted jurisdiction over a nonresident doctor on the basis of his phone call from Utah to Montana in which he rendered a new diagnosis to his patient. *See also Wright,* 459 F.2d at 289 n. 4 (court stated in dicta that it would be inclined to find jurisdiction where a "doctor could be said to have treated an out-of-state patient by mail").

### III.

 We hold that Freeman's actions were sufficient to establish jurisdiction. While Freeman did not solicit Kennedy's business in Oklahoma, he did purposefully direct his actions there. He willingly accepted the sample from Oklahoma; he signed a report establishing the thickness of lesion; and he evidently sent his bill there. Freeman rendered his diagnosis to Kennedy in Oklahoma, through the mail, knowing its extreme significance and that it would be the basis of Kennedy's further treatment there.

Asserting jurisdiction over Freeman is compatible with the notions of "fair play and substantial justice" embodied in the Due Process Clause. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985). In this case, the defendant, Freeman, can defeat otherwise proper jurisdiction only by presenting "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* at 477, 105 S.Ct. at 2185. The district court reasoned that given the state's compelling interest in ensuring access to out-of-state, specialized medical care, jurisdiction should not lie in this case. However, when a doctor purposefully directs her activities at the forum state, that state has a greater interest in deterring medical malpractice against its residents. *Lemke,* 552 F.Supp. at 837; *McGee,* 442 F.Supp. at 1279. The district court's concerns are placed in their proper perspective when one considers that suits against doctors are always available in their home states. Thus, finding jurisdiction in this type of case will have only an incremental deterrent effect on doctors who provide health care to citizens of foreign states. At any rate, our decision is consistent with the Supreme Court's observation that "[t]he Due Pro-

cess Clause allows flexibility in ensuring that commercial actors are not effectively 'judgment proof' for the consequences of obligations they voluntarily assume in other States." *Burger King,* 471 U.S. at 486, 105 S.Ct. at 2189–90.

In consideration of the foregoing, we RE-VERSE.